**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION no. 3:11-cv-0141**

**THE UNITED STATE OF AMERICA,
THE STATE OF COLORADO,
THE STATE OF GEORGIA,
THE STATE OF NORTH CAROLINA,
THE STATE OF TEXAS, AND
THE COMMONWEALTH OF VIRGINIA, *EX
REL.* ANTONIO SAIDIANI,**

**PLAINTIFFS.**


**V.**

**NEXTCARE, INC.
NEXTCARE ARIZONA LLC
COLORADO URGENT CARE, LLC
NEXTCARE GEORGIA LLC,
NEXTCARE NORTH CAROLINA LLC
JOHN SHUFELDT, AND
DOES 1 THROUGH 25, INCLUSIVE**

**DEFENDANTS.**


**PLAINTIFF/RELATOR'S RESPONSE TO
<u>DEFENDANT SHUFELDT'S MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

STANDARD OF REVIEW ................................................................................ 5

ARGUMENT ................................................................................................ 5

I.      The Indemnity Agreement Does Not Indemnify Shufeldt, And Shufeldt Therefore
        Cannot Assert That He Is Covered By The Releases .............................................. 5

        A.      By Their Express Terms, The Releases Are Not Effective Unless Shufeldt
                is "Legally Entitled" To Be Indemnified; NextCare Cannot Legally
                Indemnify Shufeldt Because Shufeldt Knowingly Failed to Act In Good
                Faith, And Acted  Contrary to the Interests of the Company ...................... 5

        B.      The Indemnification Agreement Is Void Due To A Lack Of Consideration
                And Because Its Terms Have Not Been Met .......................................... 10

II.     The Releases Are Not Effective ............................................................ 12

III.    Saidiani Is First To File Against Shufeldt ............................................... 14

CONCLUSION ............................................................................................ 16

i

# TABLE OF AUTHORITIES

**Cases**

*Aleynikov v. Goldman Sachs*, 2012 WL 6603397 (D.N.J.) ...................................................7

*Cochran v. Sitfel Fin. Corp.*, 2000 WL 286722 at *18 (Del. C. Mar 8, 2000), *rev' other grounds*, 809 A.2d 555 (Del. 2002) ...........................................................8

*Continental Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219 (Del. Ch. 2000) .................11

*First State Staffing Plus, Inc. v. Montgomery Mut. Ins. Co.,* 2005 WL 2173993 .............11

*Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 655 (4th Cir. 2004). .............................5

*Hampton v. Columbia/HCA Healthcare Corp.,* 318 F.3d 214 (D.D.C. 2003) .................16

*Heckler v. Community Health Services,* 467 U.S. 51, 64 (1984) .....................................10

*Hermelin v. K-V Pharmaceutical Corp.*, 54 A.3d 1093 (Del. Ch. 2012) ...........................8

*James J. Gpry Mechanical Contracting, Inc. v. BPG Residential Parterns V, LLC*, 2011 WL 6935279 (Dec. 30, 2011 Del. Ch.). ................................................11

*Nemet Chevrolet Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, (4th Cir. 2009) ...........5

*U.S. ex rel. Berge v. Bd. of Trustees*, 104 F.3d 1453 (4th Cir. 1997). ..................................3

*U.S. ex rel. Chandler v. Cook County*, 277 F.3d 969 (7th Cir. 2002), *aff'd*, 538 U.S. 119 (2003) ...................................................................3

*United States ex rel. Ortega v. Columbia Healthcare, Inc.,* 240 F. Supp. 2d 8 (D.D.C. 2003) ...........................................................................16

*United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503 (6th Cir. 2009) .................16

*VonFeldt v. Stifel Fin. Corp.*, 1999 WL 413393 (Del. Ch. June 11, 1999) ........................9

*Waltuch v. Conticommodity Servs., Inc.*, 88 F.3d 87 (2d Cir. 1996) ..................................9

Case 3:11-cv-00141-GCM   Document 49   Filed 01/25/13   Page 3 of 23

**Statutes**

31 U.S.C. § 3730(b)(5) .................................................................................................... 15

8 <u>Del. C.</u> § 145(a) ............................................................................................................. 9

8 Del. C. § 145(d) ........................................................................................................... 12

Colorado: Colo. Rev. Stat. § 25.5-4-306(2)(e) ............................................................. 15

False Claims Act, 31 U.S.C. § 3729 *et seq* ("FCA") .................................................... 1

Georgia: Ga. Code Ann. § 49-4-168.2(c)(6) .................................................................. 15

N.C. Gen. Stat. § 1•608(b)(5) ........................................................................................ 15

Tex. Hum. Res. Code Ann. § 36.106 .............................................................................. 15

Va. Code Ann. § 8.01-216.5(E) ...................................................................................... 15

**Rules**

Fed. R. Civ. P. 12(d) ................................................................................................ 5, 17

Defendant John Shufeldt ("Shufeldt") was the architect of several schemes that defrauded the United States and the five states in which NextCare operated urgent care facilities of approximately $17 million.

Shufeldt initiated the schemes in the mid-2000's. They involved thousands of false billings, and obtaining reimbursements from governmental health care programs for thousands of medically unnecessary allergy, spirometry, and H1N1 influenza virus tests.

In 2010, NextCare became aware that there was a federal investigation into these unlawful activities, including Shufeldt's role in the fraud. The fraud stopped by July 31, 2010.

One month later, on August 31, 2010, NextCare signed a sham indemnity agreement with Shufeldt which purportedly indemnified him for his role in the schemes. On the same day the agreement was signed, Shufeldt resigned as NextCare's Chief Executive Officer.

On March 24, 2011, Plaintiff/Relator Saidiani filed this lawsuit against NextCare and Shufeldt. Saidiani alleged, *inter alia*, that Defendants violated the federal False Claims Act, 31 U.S.C. § 3729 *et seq* ("FCA") and its state law analogs in Colorado, Georgia, North Carolina, Texas and Virgina (the "State FCA's).[1] The Saidiani Complaint, which is hereby incorporated by reference in its entirety, described in detail Defendant Shufeldt's central participation in the fraudulent scheme. *See, e.g., Saidiani Complaint,* ¶¶ 45-50; 64-70; 86-87, 102 (describing how Shufeldt issued standing orders to the NextCare employees requiring them to perform medically unnecessary testing on patients, pressured them to meet quotas tied to compensation, and directed them to generate more revenue per patient regardless of medical need).

---

[1] On December 21, 2009, a former NextCare employee named Lorin Granger ("Granger") had filed a suit against NextCare. The suit was filed under seal (thus, its existence was unknown to Saidiani). Granger sued under the Federal FCA. Granger did not sue under the State FCA's, and thus did not seek to recover the money lost by the States. Nor did Granger sue Shufeldt as the mastermind of the scheme.

1

Following its investigation, the United States and several of the plaintiff States entered settlement negotiations. Under the Federal and State FCA's, NextCare was arguably liable for approximately $51 million in damages ($17 million, times three), and a minimum fine of $5,500 for every single false claim submitted.

In June 2012, the United States and the State of North Carolina intervened in both the Granger and Saidiani lawsuits. At or about the same time, the United States, North Carolina, and three of the remaining four States negotiated a $10 million settlement with NextCare – but not with Defendant Shufeldt. NextCare and the United States entered a settlement agreement (the "Federal Settlement Agreement"). Colorado, North Carolina, Texas and Virginia also executed settlement agreements with NextCare (the "State Settlement Agreements")(Collectively, the Federal and State Settlement Agreements with be referred to as the "Settlement Agreements" or the "Settlements"). On information and belief, the relatively modest settlement amount of $10 million – when compared to Nextcare's potential liability of well over $50 million – was significantly driven by NextCare's assertion that, due to financial hardship, it could not pay more than $10 million.

Plaintiff Saidiani was a signatory to the Federal Settlement Agreement. That Agreement expressly provided that Saidiani could continue to pursue his claims against Defendant Shufeldt, the mastermind of the fraudulent scheme, unless Shufeldt was "legally entitled" to indemnification from NextCare. Federal Settlement Agreement, ¶III(9)(h). Contrary to Shufeldt's pleading, Saidiani never signed any agreement with NextCare releasing his State FCA claims.

At or about the same time that the Settlements with NextCare were executed, the United States declined to intervene against Shufeldt.[2] Granger, having not sued Shufeldt, was not able to go forward. However, Saidiani – who named Shufeldt in his Complaint, and who has direct evidence of Shufeldt's central role in the fraud – elected to go forward and attempt to make the governmental parties whole. This is precisely how the Federal and State FCA's are intended to work.

Shufeldt was subsequently served with the Complaint in early October, 2012. On December 11, 2012, just days before Shufeldt was required to either answer Saidiani's Complaint or otherwise plead, Shufeldt wrote a short letter to the CEO of NextCare, John Julian, seeking to be indemnified as to the Saidiani lawsuit. *See* Exhibit A to Declaration of David W. Long. *The next day*, Julian wrote a one page letter to Shufeldt, in which he asserted that Shufeldt was legally entitled to be indemnified by NextCare. *See* Exhibit A to Declaration of David W. Long.

Shufeldt has now filed a Motion to Dismiss Saidiani's lawsuit ("MTD"). The MTD does not address the merits of Shufeldt's fraud. Rather, it seeks relief on the grounds that he is (allegedly) entitled to indemnification from NextCare. Shufeldt bases his claim of indemnity on the letter from Julian, and further asserts that this purported indemnity bars a lawsuit against him due to the releases in the Federal and State Settlement Agreements to which he was not a

---

[2] At or about the same time that the settlements were being finalized, the United States informed Saidiani that it was declining to intervene in the case against Shufeldt. Such a decision provides "no reason to presume that a decision by the Justice Department not to assume control of the suit is a commentary on its merits. The Justice Department may have myriad reasons for permitting the private suit to go forward including limited prosecutorial resources and confidence in the relator's attorney." *U.S. ex rel. Chandler v. Cook County*, 277 F.3d 969, 974 n. 5 (7th Cir. 2002), *aff'd*, 538 U.S. 119 (2003). Thus, an assumption that declination is a comment on the merits "is contrary to the purpose of the *qui tam* provision, i.e., encouraging private parties to litigate on behalf of the government. *U.S. ex rel. Berge v. Bd. of Trustees*, 104 F.3d 1453, 1458 (4th Cir. 1997).

3

signatory. Shufeldt also claims that this action must be dismissed due to the "first to file" rule. These arguments are without merit.

First, notwithstanding the rather curious timing and content of the Julian letter, Shufeldt cannot claim the benefit of the releases contained the Settlement Agreements because his purported indemnity agreement is invalid as a matter of statute, contract, and public policy. Therefore, Shufeldt is not – to use the precise words contained in the releases – "legally entitled" to indemnification by NextCare.

Second, with respect to Saidiani's state claims, Shufeldt may not claim the benefit of the releases contained in the State Settlement Agreements because, contrary to the representations in Shufeldt's MTD, Saidiani was not a party to those Agreements.[3]

Third, the releases are not effective until NextCare completely satisfies its financial obligations to the government parties. That has not occurred, and is presently not scheduled to occur for at least another four years.

Fourth, Defendant's assertions with respect to the "first to file" rule fail, given that Plaintiff Saidiani was the first to file against Defendant Shufeldt, and first to file state FCA claims under the laws of the states of Colorado, Georgia, North Carolina, Texas, and Virginia.

For all of these reasons, Defendant's MTD should be summarily denied. Alternatively, since Shufeldt's MTD was accompanied by various documents which are outside the scope of the pleadings, Plaintiff should be given the opportunity to discover and present material pertinent in opposition thereto, including but not limited to evidence relating to the underlying fraud, the

---

[3] Additionally, on information and belief, the State of Georgia never executed a settlement with any named Defendant, and thus Saidiani's Georgia claims are pending and have never been released.

negotiation of the alleged indemnification agreement, and the process by which NextCare agreed to indemnify Shufeldt. *See* Rule 12(d), Federal Rules of Civil Procedure.

## STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) should be granted only if "it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief." *Greenhouse v. MCG Capital Corp.*, 392 F.3d 650, 655 (4th Cir. 2004). In analyzing a Rule 12(b)(6) motion, a court must accept as true all well-pled allegations of the challenged complaint. *Nemet Chevrolet Ltd. V. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009). "If, on a motion under Rule 12(b)(6) . . ., matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d)

## ARGUMENT

I. **The Indemnity Agreement Does Not Indemnify Shufeldt, And Shufeldt Therefore Cannot Assert That He Is Covered By The Releases**

A. **By Their Express Terms, The Releases Are Not Effective Unless Shufeldt is "Legally Entitled" To Be Indemnified; NextCare Cannot Legally Indemnify Shufeldt Because Shufeldt Knowingly Failed to Act In Good Faith, And Acted Contrary to the Interests of the Company**

Pursuant to the Federal Settlement Agreement, the United States and the Relators agreed to release NextCare from any civil monetary claims they had on behalf of the United States for certain "Covered Conduct" as defined in the Agreement. The Covered Conduct spanned the period from January 1, 1996, through July 31, 2010. Shufeldt now seeks to gain the benefit of the NextCare's release by relying on the following language from the Federal Settlement Agreement:

> Notwithstanding the releases given in Paragraphs 4-8 of this Agreement . . . the following claims of the United States are specifically reserved and are not released: . . . Any claims against NextCare's former Chief Executive Officer, Dr.

5

> John Shufeldt**,** or any other individuals, including current and former officers, directors, shareholders, and employees; however, if such individuals are **legally entitled** to repayment from NextCare, by claim for indemnification, contribution, reimbursement or otherwise, as a result of a claim brought by the United States or any other party to this Agreement for the Covered Conduct, the release provided in Paragraphs 4 and 5 above for any monetary claim shall apply to such individuals with respect to that claim.

Federal Settlement Agreement, ¶III(9)(a), 9(h)(emphasis added).[4] Thus, Saidiani's federal claims against Shufeldt are expressly reserved and are not released *unless* it is determined that he is "legally entitled" to indemnification by NextCare.

Shufeldt faces a similar burden with respect to the State claims. The Settling States agreed to release NextCare from any civil monetary claims for Covered Conduct as defined in the State Settlement Agreements. The Covered Conduct spanned the period from January 1, 2006, through July 31, 2010. Shufeldt now seeks to gain the benefit of the NextCare's release by relying on the following language from the State Settlement Agreements:

> Notwithstanding any term of this Agreement, the State specifically does not release any person or entity from any of the following liabilities . . . [a]ny liability of NextCare's former Chief Executive Officer, Dr. John Shufeldt, or any other individuals, including current or former officers, directors, shareholders or other employees, with respect to the Covered Conduct, provided that if any individual is **legally entitled** to repayment from NextCare, by claim for indemnification, contribution, reimbursement or otherwise, as a result of a claim brought by the State or other party to this Agreement for the Covered Conduct, the release provided in paragraph 3 above for any monetary claim shall apply to such individual with respect to that claim;

North Carolina Settlement Agreement, ¶III(3)(4)(underlined emphasis in original; **bold** emphasis added). Thus, Saidiani's claims against Shufeldt on behalf of the settling States are expressly

---

[4] The Federal Settlement Agreement further provides that the release provisions should be narrowly construed: "The parties do not release any claims not expressly released herein, nor any claims against any other person or entity, except to the extent provided for in Paragraph 19 (waiver for beneficiaries paragraph) below. *Id.* ¶18.

reserved and are not released *unless* it is determined that he is "legally entitled" to indemnification by NextCare.[5]

In an attempt to meet the burden of proving that he is legally entitled to indemnification, Shufeldt has submitted to this Court an Indemnification Agreement dated August 31, 2010 (the "Agreement"). *See,* Exhibit B to Declaration of David W. Long.

The Agreement states that Delaware law applies to its provisions. The policy reasons behind Delaware's indemnification laws are clear:

> The public policy served by authorizing the advancement and indemnification of litigation expenses incurred by officers and directors is well-settled. Without affording this protection, corporations would find it difficult to retain high-quality directors and officers, especially ones willing to make socially useful decisions that involve economic risk. By authorizing the provision of indemnity and advancement within certain statutory guidelines, the General Assembly sought to encourage well-qualified persons to serve as directors and officers of Delaware corporations and, in that capacity, to be willing to commit their corporations, after the exercise of good faith and care, to risky transactions that promise a lucrative economic return.

*Aleynikov v. Goldman Sachs*, 2012 WL 6603397 (D.N.J.) (citations omitted). The "statutory guidelines" referred to above are strict; indeed, an indemnity agreement is invalid when the rights to indemnification are "contrary to the limitations or prohibitions set forth in . . . public policy." *Cochran v. Sitfel Fin. Corp.*, 2000 WL 286722 at *18 (Del. C. Mar 8, 2000), *rev' other grounds*, 809 A.2d 555 (Del. 2002). Prohibiting the indemnification of "bad actors," as recently stated by a Delaware Court, "provides corporate officials [such as Shufeldt] with an appropriate incentive to avoid such acts to begin with." *Hermelin v. K-V Pharmaceutical Corp.*, 54 A.3d 1093, 1094-95 (Del. Ch. 2012).

---

[5] Saidiani's claims against Shufeldt under the Georgia FCA claims have never been the subject of any settlement agreement, and those claims have never been dismissed. They remain active and pending, and thus cannot be dismissed through the instant Motion.

Here, Shufeldt was hired in the early to mid-2000's. The Covered Conduct addressed in the Settlement Agreements indisputably ended on July 31, 2010. One month later, on August 31, 2010, the indemnity agreement was signed. On the same day – August 31, 2010 – *Shufeldt resigned*. Thus, the Agreement did not attract Shufeldt to his post, but rather attempted to immunize him on his way out the door, *after* he had made numerous fraudulent decisions which were against the best interest of the corporation, and *after* he made the decisions which led to NextCare's corporate liability. Thus, the Agreement is void on this point alone – Delaware law does not permit a corporation to indemnify a resigning officer for fraudulent conduct which occurred long before the purported indemnity agreement was executed.

However, there is more. Under Delaware law, a corporate officer's conduct cannot be legally indemnified *unless* the person acts in good faith and in the best interests of the corporation*:*

> **A corporation shall have power to indemnify any person** who was or is a party or is threatened to be made a party to any threatened, pending or completed action, suit or proceeding, whether civil, criminal, administrative or investigative (other than an action by or in the right of the corporation) by reason of the fact that the person is or was a director, officer, employee or agent of the corporation, or is or was serving at the request of the corporation as a director, officer, employee or agent of another corporation, partnership, joint venture, trust or other enterprise, against expenses (including attorneys' fees), judgments, fines and amounts paid in settlement actually and reasonably incurred by the person in connection with such action, suit or proceeding **if the person acted in good faith and in a manner the person reasonably believed to be in or not opposed to the best interests of the corporation**, and, with respect to any criminal action or proceeding, had no reasonable cause to believe the person's conduct was unlawful.

8 Del. C. § 145(a)(emphasis added).[6] Under § 145, "Delaware corporations lack the power to indemnify a party who did not act in good faith or in the best interests of the corporation."

---

[6] NextCare and Shufeldt – recognizing these limits – incorporated this language into the Indemnity Agreement, which states that Shufeldt is only entitled to indemnification if he "acted in good faith and in a manner [he] reasonably believed to be in or not opposed to the best

*VonFeldt v. Stifel Fin. Corp.*, 1999 WL 413393, *2 (Del. Ch. June 11, 1999); *see also Waltuch v. Conticommodity Servs., Inc.*, 88 F.3d 87, 95 (2d Cir. 1996) (finding that a charter provision "which would require indemnification of [a corporate official] even if he acted in bad faith, is inconsistent with § 145(a) and thus exceeds the scope of a Delaware corporation's power to indemnify").

Shufeldt is a bad actor, and NextCare is prohibited from indemnifying him under Delaware law. That his conduct was not in good faith is rather simple to establish. As detailed in the Complaint, Shufeldt masterminded several schemes designed to defraud the government. Indeed, he "succeeded" by ripping off the government for $17 million. But then his schemes were uncovered, and he cost the corporation $10 million in settlement payments, severe reputation damage due to press coverage of the investigation and settlement, and an untold amount in legal fees. This is not "good faith" conduct which was in the best interests of the corporation. Rather, this was conduct undertaken in bad faith, in opposition to the corporation's interests.

And he acted knowingly. Shufeldt is doctor, a lawyer, and a professor of business ethics. As stated on the website of one of Shufeldt's businesses:

> He is the Health Law Editor and on the Advisory Board for the *Journal of Urgent Care Medicine* and was the Editor in Chief of *Urgent Care Alert* and ED Legal Bulletin. He is an adjunct professor at the Arizona State University, W.P. Carey School of Business where he teaches Health Law and Ethics to MBA and Health Sector Management students and is an adjunct professor at the Sandra Day O'Connor College of law where he teaches a seminar on Health Law Entrepreneurism.

_____

interests of the Company, and with respect to any criminal Proceeding, had no reasonable cause to believe [his] conduct was unlawful."

*See*, http://www.shufeldtconsulting.com/about-us/john-shufeldt/. There is perhaps no one who actually understands the intersection of law, medicine, and business as well as Shufeldt.[7]

Delaware law, and public policy, prohibits NextCare from indemnifying Shufeldt for his knowingly fraudulent actions. Indeed, permitting NextCare to do so would, in effect, immunize individuals from liability for knowingly fraudulent conduct. It would also remove the incentive for corporate directors "to avoid such [bad] acts to begin with," while simultaneously depriving taxpayers of a remedy to pursue ill-gotten gains.

### B. The Indemnification Agreement Is Void Due To A Lack Of Consideration And Because Its Terms Have Not Been Met

Even if it was determined that Defendant Shufeldt was legally entitled to indemnification (which he is not), the Indemnification Agreement on which Defendant relies is itself invalid as it is void for lack of consideration.

"It is the blackest of black-letter law that an enforceable contract requires an offer, acceptance, and consideration." *James J. Gpry Mechanical Contracting, Inc. v. BPG Residential Parterns V, LLC*, 2011 WL 6935279 (Dec. 30, 2011 Del. Ch.) at *2. Consideration is "a benefit to a promisor or a detriment to a promise pursuant to the promisor's request." *Continental Ins. Co. v. Rutledge & Co., Inc.*, 750 A.2d 1219, 1232 (Del. Ch. 2000). A commitment to honor a pre-existing obligation works neither benefit nor detriment; therefore, "[a] promise to fulfill a pre-existing duty, such as a promise to pay a debt owed, cannot support a binding contract" because consideration is lacking." *First State Staffing Plus, Inc. v. Montgomery Mut. Ins. Co.*,

---

[7] Even if Shufeldt could somehow claim that he didn't know his conduct was unlawful, that is of no import: as a health care provider doing business with the government, he is charged with a "duty to familiarize [himself] with the legal requirements" of the government program at issue. *Heckler v. Community Health Services*, 467 U.S. 51, 64 (1984). "Protection of the public fisc requires that those who seek public funds act with scrupulous regard for the requirements of law." *Id.*, at 63. Therefore, the government holds a provider such as Shufeldt "to the most demanding standards in [his] quest for public funds." *Id.*

2005 WL 2173993, at *9 (De.. Ch. Sept. 6, 2005); *see also Continental Ins. Co.,* 750 A.2d at 1232 ("A party cannot rely upon a pre-existing duty as his legal detriment in an attempt to formulate a contract").

Here, there is no proper consideration for the Agreement. The Recitals section of the Agreement states that its purpose was to "attract and retain qualified individuals." Similarly, the body of the Agreement states: "the Company acknowledges that [Shufeldt] is relying upon this Agreement in serving as an officer or director of the Company." *See id.* at 11. However, the Agreement was executed on August 31, 2010, the same day Shufeldt was resigning following the onset of a government investigation, and exactly one month after the conclusion of the fraudulent acts which constituted "Covered Conduct" in the Settlement Agreements. How can Shufeldt's agreement to serve as CEO be consideration for the Agreement ***if he was departing the Company on the same day that the Agreement was supposedly signed?*** It cannot. Therefore, the Agreement is therefore invalid and unenforceable for lack of consideration.

Additionally, the Agreement cannot be invoked based on its own terms. The Agreement provides for a set of procedures that must be followed in order for Shufeldt to obtain indemnification. For example, after receiving a prompt request for indemnification, paragraph 6 requires that the Secretary of the Company advise the Board in writing that the Indemnitee has requested indemnification, and that Shufeldt's right to indemnification must be determined by one of four methods: (i) by majority vote of Disinterested Directors; (ii) by a committee of Disinterested Directors; (iii) by independent legal counsel in a written opinion to the Board; or (iv) by the stockholders of the Company. *Id.* at 5.

This language in the Agreement is almost verbatim from the requirements of Delaware's indemnification procedures:

Any indemnification under subsections (a) and (b) of this section (unless ordered by a court) shall be made by the corporation only as authorized in the specific case upon a determination that indemnification of the present or former director, officer, employee or agent is proper in the circumstances because the person has met the applicable standard of conduct set forth in subsections (a) and (b) of this section. Such determination shall be made, with respect to a person who is a director or officer of the corporation at the time of such determination: (1) By a majority vote of the directors who are not parties to such action, suit or proceeding, even though less than a quorum; or (2) By a committee of such directors designated by majority vote of such directors, even though less than a quorum; or (3) If there are no such directors, or if such directors so direct, by independent legal counsel in a written opinion; or (4) By the stockholders.

See 8 Del. C. § 145(d).

There is no evidence that any the procedures required by law, or those listed in the Agreement, were followed here. Instead, on December 11, 2012 three days before the instant MTD was due to this Court, Shufeldt's counsel casually wrote to NextCare requesting indemnification. NextCare's CEO, apparently without following the required procedures of Board or independent counsel approval, and apparently without questioning whether the knowing misconduct that Shufeldt pursued to the detriment of the Company allowed for corporate indemnification, simply agreed to the request *the very next day*. This is particularly surprising, given the protestations of financial difficulties that NextCare expressed during the pendency of the case against it.

Delaware law does not countenance indemnity agreements unless they are designed to attract qualified individuals to corporate posts, and unless the corporation's interests are carefully protected. Here, there is no public policy reason to countenance a *post hoc* indemnity agreement whose sole purpose appears to be an effort to immunize fraudulent conduct.

## II. The Releases Are Not Effective

With respect to Saidiani's state claims, Shufeldt may not claim the benefit of the releases contained in the State Settlement Agreements because, contrary to the representations in

Shufeldt's MTD, Saidiani was not a party to those Agreements.[8]  Therefore, Shufeldt, who is also not a party to those Agreements, cannot claim the benefit of those releases as against Saidiani.

Moreover, the federal release upon which Shufeldt seeks to rely is expressly conditioned "upon NextCare's payment in full of the Settlement Amount."  Federal Settlement Agreement, ¶III(4). The Settlement Amount – a total of $10 million – is expressly defined as "an initial fixed payment . . . and an additional amount" which is scheduled to be paid over a period of 5 years. Federal Settlement Agreement, ¶III(1).   On information and belief, NextCare has made only an initial payment of the Settlement Amount, namely, $3.5 million, plus interest.

Shufeldt faces a similar problem with respect to the States.   The State Settlement Agreements upon which Shufeldt seeks to rely are expressly conditioned "upon receipt by the State of its full and complete share of the Medicaid State Settlement Amount."  *See, e.g.,* North Carolina State Settlement Agreement, ¶III(3).    The Medicaid State Settlement Amount is expressly defined as "an initial fixed payment . . . and an additional amount" which is scheduled to be paid over a period of 5 years.  See, e.g., North Carolina State  Settlement Agreement, ¶III(1).

Accordingly, per the express terms of the Federal and State Settlement agreements, the releases through which Shufeldt seeks protection are not operative until the Federal Settlement Amount and the Medicaid State Settlement Amount (collectively, the "Settlement Amounts") are fully paid.  That has not occurred, and is not scheduled to occur for several years.

---

[8] As noted previously, on information and belief the State of Georgia never executed a settlement with any named Defendant, and thus Saidiani's Georgia claims are pending and have never been released.

### III. **Saidiani Is First To File Against Shufeldt**

Although Shufeldt's MTD presents a series of alleged facts designed to impugn Saidiani's Complaint as parasitic, many of the "facts" listed are irrelevant, and in some cases, just plain wrong. The cogent, undisputed facts appear below in chronological order.

Relator Lorin Granger filed a Federal FCA action against NextCare. Granger did not name Shufeldt as a Defendant, and did name any States as plaintiffs. The Granger Complaint was filed under seal.

Unaware of the existence of the Granger case due to the seal, shortly before noon on March 24, 2011, Relator Saidiani filed a Federal *and State* FCA action against NextCare, *and Shufeldt individually*. Saidiani's Complaint contained exquisite details directly implicating Shufeldt as the architect of the fraud, *and pled claims under the FCA's of the named states.*[9]

Although the State claims were filed under the Federal FCA's pendent jurisdiction provision,[10] the Saidiani Complaint is effectively six lawsuits – one under the Federal FCA, and five under the FCA's of Colorado, Georgia, North Carolina, Texas, and Virginia. Each of the State FCA's contain so-called "first to file" provisions. *See* Colorado: Colo. Rev. Stat. § 25.5-4-306(2)(e); Georgia: Ga. Code Ann. § 49-4-168.2(c)(6); N.C. Gen. Stat. § 1•608(b)(5); Tex. Hum. Res. Code Ann. § 36.106; and Va. Code Ann. § 8.01-216.5(E). Curiously, however, Shufeldt has not moved to dismiss Saidiani's suit under these provisions, nor does Shufeldt even reference any of the State FCA's, all of which provide direct support that Saidiani is first to file as to those statutes. Instead, Shufeldt seeks to invoke the "first-to-file" rule contained in the

---

[9] Later the same day, Granger filed an amended complaint naming the States, but again not naming Shufeldt.

[10] This provision states that "district courts shall have jurisdiction over any action brought under the laws of any State for the recovery of funds paid by a State or local government if the action arises from the same transaction or occurrence as an action brought under section 3730." 31 U.S.C. 3732(b).

Federal FCA.  *See* 31 U.S.C. § 3730(b)(5).  But that statute is effectively irrelevant here, since the claims against Defendant Shufeldt and the state law claims are the only claims that remain in this litigation.

Shufeldt then cites a series of federal cases that stand for the unremarkable proposition that the statute rebuffs parasitic claims.  None of the other cases cited by Shufeldt involves facts akin to those here, namely, claims against a defendant who has been expressly carved out of a federal settlement agreement or pendent state law claims that an earlier plaintiff did not allege.  Indeed, in many of the cases cited by Shufeldt, the United States itself moved to dismiss the claims under the first-to-file rule.  *See United States ex rel. Poteet v. Medtronic, Inc.*, 552 F.3d 503 (6th Cir. 2009) (government filed motion to dismiss complaint as barred by first to file provision and public disclosure provision of the FCA after it had entered into a settlement based on an earlier filed sealed complaint); *Hampton v. Columbia/HCA Healthcare Corp.,* 318 F.3d 214 (D.D.C. 2003) (government sought to dismiss claims under first-to-file rule); *United States ex rel. Ortega v. Columbia Healthcare, Inc.,* 240 F. Supp. 2d 8, 13 (D.D.C. 2003) (United States sought to dismiss claim filed by Relator who filed kickback allegations that had been previously filed by earlier Relator).

Here, the government parties have not moved to dismiss Saidiani's claims against Shufeldt.  Rather, they have declined to intervene, leaving Saidiani with the opportunity to pursue additional gains on their behalf.  This is precisely how the Federal and State FCA's are intended to function, and this intent is reflected in the following language from the United States' Amended Notice of Partial Intervention, Declination, Settlement, Dismissal, and Motion to Lift Seal:

> No claims are dismissed against Defendant John Shufeldt, M.D.

Although the United States declines to intervene with regard to John Shufeldt, M.D., we respectfully refer the Court to 31 U.S.C. 3730(b)(1), which allows the Relator to maintain the action in the name of the United States . . . .

*Saidiani Docket,* Entry No. 28 (filed June 19, 2012).

Moreover, as a direct result of Shufeldt's fraud, there are substantial sums of money owed to the government plaintiffs that have not (yet) been recovered. As noted above, on information and belief the investigation revealed that the "single damages" – that is, the cumulative dollar amount of the false claims submitted to the federal and state governments in this case – were approximately $17 million, yet the case settled for $10 million due to NextCare's allegedly poor financial position. Thus, there are substantial additional damages for which Shufeldt should be subject to the legal processes of the Federal and State False Claims Acts.

Saidiani's complaint – which is indisputably the first to name Shufeldt as a defendant and the first to bring claims under the State FCA's – is "first to file" as to Shufeldt, and "first to file" under the State FCA's.

## **CONCLUSION**

For all the reasons set forth above, Defendant's motion to dismiss should be denied in its entirety. Alternatively, since Shufeldt's MTD was accompanied by various documents which are outside the scope of the pleadings, Plaintiff should be given the opportunity to discover and present material pertinent in opposition thereto, including but not limited to evidence relating to

16

the underlying fraud, the negotiation of the alleged indemnification agreement, and the process by which NextCare agreed to indemnify Shufeldt. *See* Rule 12(d), Federal Rules of Civil Procedure.

MARSHALL, ROTH & GREGORY, PC

<u>S/Clifford C. Marshall, Jr.</u>
Clifford C. Marshall, Jr.
NC State Bar No. 10418
90 Southside Avenue, Ste. 200
Asheville, North Carolina 28801
Tel: (828) 281-2100
Fax: (828) 281-2120
Email:cmarshall@mrglawfirm.com

Daniel R. Miller
Berger & Montague, P.C.
1622 Locust Street
Philadelphia, PA 19103
Tel: (215) 875-5702
dmiller@bm.net

17

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing **PLAINTIFF/RELATOR'S RESPONSE TODEFENDANT SHUFELDT'S MOTION TO DISMISS** has been filed electronically with the Clerk of Court using the CM/ECF system, which will deliver copies to the following:

Donald H. Caldwell
Assistant United States Attorney
The U.S. Attorney's Office
Western District of North Carolina
227 West Trade Street, Suite 1650
Charlotte, NC 28202
Donald.H.Caldwell@usdoj.gov

Mark T. Calloway
N.C. Bar No. 10822
ALSTON & BIRD LLP
101 South Tryon Street, Suite 4000
Charlotte, North Carolina 28280-4000
(704) 444-1089, phone
(704) 444-1689, facsimile
mark.calloway@alston.com

William H. Jordan (*pro hac vice*)
GA Bar No. 405112
ALSTON & BIRD LLP
1201 W. Peachtree Street, NW
Atlanta, Georgia 30309
(404) 881-7850, phone
(404) 881-7777, facsimile
bill.jordan@alston.com

David W. Long
John W. O'Hale
POYNER SPRUILL, LLP
P.O. Box 1801
Raleigh, NC 27602
Tel: (919)783-6400
Fax: (919)783-1075
dwlong@poyners.com
johale@poyners.com

This the 25th day of January, 2013.

MARSHALL, ROTH & GREGORY, PC
**s/Clifford C. Marshall, Jr.**
Clifford C. Marshall, Jr.
NC State Bar No. 10418
90 Southside Avenue, Ste. 100
Asheville, North Carolina 28801
Tel: (828) 281-2100
Fax: (828) 281-2120
Email: cmarshall@mrglawfirm.com