IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11CV141

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| THE STATE OF COLORADO, | ) | |
| THE STATE OF GEORGIA, | ) | |
| THE STATE OF NORTH CAROLINA, | ) | |
| THE STATE OF TEXAS, and | ) | |
| THE COMMONWEALTH OF VIRGINIA | ) | |
| Ex rel. ANTONIO SAIDIANI, | ) | |
|     Plaintiffs, | ) | |
| | ) | |
| Vs. | ) | ORDER |
| | ) | |
| NEXTCARE, INC., NEXTCARE ARIZONA LLC, | ) | |
| COLORADO URGENT CARE, LLC, | ) | |
| NEXTCARE GEORGIA LLC, NEXTCARE | ) | |
| NORTH CAROLINA LLC, MATRIX | ) | |
| OCCUPATIONAL HEALTH, INC., | ) | |
| NEXTCARE TEXAS LLC, VIRGINIA URGENT | ) | |
| CARE LLC, JOHN SHUFELDT, and DOES 1 | ) | |
| THROUGH 25, INCLUSIVE, | ) | |
|     Defendants. | ) | |

This matter is before the Court upon Relator Saidiani's Motion for Attorney's Fees, Costs and Expenses. On December 21, 2009, Lorin Granger ("Granger") filed a *qui tam* False Claims Act ("FCA") lawsuit against NextCare, Inc. ("Next Care") in this district, alleging that NextCare had violated the FCA by billing and obtaining reimbursement from government health care programs for allegedly unnecessary medical tests performed at NextCare urgent care clinics. The Complaint named the United States as a Plaintiff, but did not originally name any states as plaintiffs. Upon reviewing Granger's original Complaint, the government began its investigation of NextCare's medical testing policies and procedures, its billings to state and federal government health care programs, and its coding practices. NextCare began cooperating with

1

the government's investigation and began discussions with the governmental entities regarding a potential settlement.

On March 24, 2011 Relator Granger amended her Complaint to add causes of action under the Georgia, North Carolina, Texas and Virginia FCAs. Unaware of the *Granger* suit, Antonio Saidiani ("Saidiani") filed an FCA lawsuit against NextCare on the same day Granger amended her Complaint.[1] In addition to the United States, the *Saidiani* Complaint named several individual states as Plaintiffs, including Colorado, Georgia, North Carolina, Texas and Virginia.

On June 4, 2012, the United States, various State Attorneys General, and NextCare entered into Settlement Agreements resolving the state and federal governments' allegations against NextCare. Relators Granger and Saidiani joined in those agreements. Pursuant to those Settlement Agreements, NextCare agreed to pay $10 million to the federal and state governments. The United States intervened in and dismissed the *Granger* Complaint. The relator in *Granger* also recovered a Relator's Share because her Complaint was the first-filed and NextCare paid her expenses, attorneys' fees, and costs pursuant to 31 U.S.C. § 3730(d)(1).[2] The United States intervened in the *Saidiani* case, as the second-filed case, for the purpose of its dismissal, since the underlying conduct had been fully resolved in the first-filed *Granger* Complaint.

Section 3730(b)(1) of the FCA allows private-citizen plaintiffs – "relators" – to bring a civil action in the name of the United States Government to expose fraud committed by third parties against the Government. In return for their service, successful relators are entitled to a percentage of the damages received as a bounty, 31 U.S.C. § 3130(d), thereby "creat[ing] a financial incentive for relators to protect the federal treasury from fraud." *Am. Civil Liberties*

---

[1] Saidiani's claims are nearly identical to those raised in the *Granger* Complaint.
[2] Pursuant to state and federal False Claims Acts, a successful relator shall receive a share of a settlement in an intervened case. 31 U.S.C. § 3730(d)(1).

*Union v. Holder*, 673 F.3d 245, 248 (4th Cir. 2011) (citing *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 540 (1943)). The relevant statutory section reads:

> If the Government proceeds with an action brought by a person under subsection (b), such person shall, subject to the second sentence of this paragraph, receive at least 15 percent but not more than 25 percent of the proceeds of the action or settlement of the claim, depending upon the extent to which the person substantially contributed to the prosecution of the action … Any payment to a person under the first or second sentence of this paragraph shall be made from the proceeds. Any such person shall also receive an amount for reasonable expenses which the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs. All such expenses, fees, and costs shall be awarded against the defendant.

31 U.S.C. § 3130(d)(1). In short, a relator is a person who *shall* receive between 15 and 25% of the Government's proceeds of the action or settlement of a claim, and that person receiving a Relator's share "*shall also*" receive an amount for reasonable expenses in bringing the action, in addition to attorneys' fees and costs. *Id.* Satisfaction of the former portion of the statutory section is an express precondition of receipt of monies under the latter. *Id.*

This bounty creates a double-edged sword in that it encourages insider plaintiffs to come forward and expose fraud, but also encourages parasitic suits by persons in search of their share of the bounty. To this end, "Congress has therefore included a number of provisions that further the golden mean between adequate incentives for whistle-blowing insiders with genuinely valuable information and discouragement of opportunistic plaintiffs . . . ." *In re Natural Gas Royalties Qui Tam Litig.*, 566 F.3d 956, 960 (10th Cir. 2009) (internal quotations and omissions omitted) (quoting *United States ex. rel. Maxwell v. Kerr-McGee Oil & Gas Corp.*, 540 F.3d 1180, 1184 (10th Cir. 2008)). One of these provisions, the so-called "first-to-file" bar, applies to the *Saidiani* Complaint: "When a person brings an action under this subsection, no person other than the Government may intervene or bring a related action based on the facts underlying the pending action." 31 U.S.C. § 3730(b)(5). That provision "encourages prompt disclosure of

fraud by creating a race to the courthouse among those with knowledge of fraud." *Campbell v. Redding Med. Ctr.*, 421 F.3d 817, 821 (9th Cir. 2005); s*ee Wang v. FMC Corp.*, 975 F.2d 1412, 1419 (9th Cir. 1992) (noting that "*[q]ui tam* suits are meant to encourage insiders privy to a fraud on the government to blow the whistle on the crime. In such a scheme, there is little point in rewarding a second toot").

The plain language of the FCA demonstrates that a relator is only entitled to attorneys' fees if that relator also obtained a relator's share following a court award or settlement. Like the federal FCA, the state FCA statutes at issue also tie the entitlement to fees and costs to the "person" receiving the Relator's Share. See COLO. REV. STAT. ANN. § 25.5-4- 306(4)(III) (West) ("Any payment to a relator under subparagraph (I) or (II) of this paragraph (a) [granting an award of 15-25% when the government proceeds with an action brought by a relator] shall be made from the proceeds. The relator shall also receive an amount for reasonable expenses that the court finds to have been necessarily incurred plus reasonable attorney fees and costs."); N.C. GEN. STAT. ANN. § 1-610(d) (West) ("The *qui tam* plaintiff also shall receive an amount for reasonable expenses that the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs."); TEX. HUM. RES. CODE ANN. § 36.110(c) (Vernon 2012) ("A payment to a person under this section [a private plaintiff, if the state proceeds with an action brought by him] shall be made from the proceeds of the action. A person receiving a payment under this section is also entitled to receive from the defendant an amount for reasonable expenses, reasonable attorney's fees, and costs that the court finds to have been necessarily incurred."); VA. CODE ANN. § 8.01-216.7(A) (West 2012) ("Any payment to a person under this section shall be made from the proceeds of the award. Any such person shall also receive an

amount for reasonable expenses that the court finds to have been necessarily incurred, plus reasonable attorneys' fees and costs.").

There is no dispute that the Federal and State Settlement Agreements reference only Relator Granger as receiving a Relator's share of the settlement proceeds. Accordingly, Saidiani recovered nothing pursuant to those agreements. However, in the latter part of 2011, Saidiani and Granger had entered into a separate private agreement between themselves to share any proceeds that resulted from the litigation. Apparently, Saidiani is receiving a share of proceeds from Granger pursuant to this private agreement with Granger.

Saidiani argues that because he and Relator Granger entered into this private agreement to share proceeds, that he should be considered a successful Relator who has "received" a Relator's share and is thus entitled to fees under the various state FCA statutes.[3] Sadiani cites no caselaw in support of his position and the plain language of the statutory texts and the settlement agreements do not support such a claim.

It appears to the Court that Saidiani is not a successful Relator who has secured a Relator's share through the Settlement Agreements entered into with the federal and state governments. The fact that he may have received a share of the proceeds through a separate private agreement with Granger does not change this conclusion. Moreover, Saidiani cites no caselaw supporting his argument that he is entitled to fees based upon his "receipt" of litigation proceeds through a private agreement with the first-filed Relator. The Court will not direct that Saidiani receive something that he was unable to secure through negotiation and settlement with NextCare.

---

[3] Saidiani is not arguing that he should recover any fees under the federal FCA.

IT IS THEREFORE ORDERED that Saidiani's Motion for Attorneys' Fees, Costs and Expenses is hereby DENIED.

Signed: February 4, 2013

Graham C. Mullen
United States District Judge