**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:11CV141**

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, *et al.*, | ) | |
| *EX REL.* ANTONIO SAIDIANI, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| NEXTCARE, INC., *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

This matter is before the Court upon Defendant John Shufeldt's Motion to Dismiss Amended Complaint with Prejudice for Lack of Standing and Pursuant to Judicial Estoppel. (Doc. No. 80.) The matter is fully briefed and ripe for disposition.

**I.     Factual Background**

On March 24, 2011, Relator Saidiani filed his Complaint under seal, alleging that NextCare, its individual urgent care clinics, and its former CEO, Dr. John Shufeldt, submitted false or fraudulent claims or caused false or fraudulent claims to be submitted for payment by various federal and state government payors from around May 2009 through "at least" April 2010, when NextCare fired him. Saidiani filed an Amended Complaint on September 1, 2011.  Saidiani contends that the United States and plaintiff states were defrauded of "tens of millions of dollars through these false claims" and demands the Relator's statutory share of damages proceeds, as well as attorneys' fees and costs.

1

On September 2, 2011, Saidiani filed a voluntary Chapter 7 bankruptcy petition in the Northern District of California.[1]  Either during the pendency of that bankruptcy proceeding or shortly after discharge, Saidiani also entered into a Relator Sharing Agreement with the relator in the first-filed *Granger* case so that both relators could share in any settlement entered between the government and NextCare.  Saidiani failed to disclose any of this to the bankruptcy court or his creditors in his September 2011 bankruptcy petition.

On June 4, 2012, NextCare entered into a settlement with the federal government and various state governments, Granger, and Saidiani. In the settlement agreement, the government did not release its individual claims against Dr. Shufeldt, but it declined to intervene in the remaining claims Saidiani brought against Dr. Shufeldt in his individual capacity. Saidiani has opted to continue those claims, which arose as early as May 2009 and which were a part of his March 2011 Complaint, and prosecute them independently.

 On Schedule B of Saidiani's 2011 voluntary bankruptcy petition, he declared "none" in response to a requirement to list and provide value for "[o]ther contingent and unliquidated claims of every nature" in question 21 and "[o]ther personal property of any kind not already listed" in question 35.  In the Statement of Financial Affairs ("SOFAs") he listed a single, unrelated matter in response to question 4 asking for "all suits and administrative proceedings to which the debtor is or was a party within **one year** immediately preceding the filling of this bankruptcy case" (emphasis in original).  On September 22, 2011, Saidiani amended his Schedule B, but even then did not disclose this case or his interest in the Relator Sharing Agreement.  On October 26, 2011, the Trustee made a Report of No Distribution and on

---

[1] Defendant Shufeldt first learned of Saidiani's 2011 bankruptcy in late May 2014 during his counsel's preparation for Saidiani's deposition.

November 29, 2011, Saidiani received his full and final discharge and the bankruptcy court closed the case.

Defendant Shufeldt has filed this Motion to Dismiss the Amended Complaint on two independent grounds: for lack of standing and pursuant to judicial estoppel. Shufeldt contends that a Relator has no standing to proceed with a *qui tam* case following his bankruptcy, and he is estopped from proceeding where he has concealed the case as an asset from the bankruptcy court and his creditors.

## II. Discussion

Defendant Shufeldt argues that Saidiani's Amended Complaint must be dismissed because he is not the proper party in interest and does not have standing to bring the False Claims Act ("FCA") claims. Where a plaintiff lacks standing, the suit must be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1). *See, e.g.*, *CGM, LLC v. BellSouth Telecomms., Inc.*, 664 F.3d 46, 52 (4th Cir. 2011) (noting that "standing . . . is generally associated with Civil Procedure Rule 12(b)(1) pertaining to subject matter jurisdiction"). Moreover, "When a defendant raises standing as the basis for a motion under Rule 12(b)(1) . . . the district court 'may consider evidence outside the pleadings without converting the proceeding to one for summary judgment.'" *White Tail Park, Inc. v. Stroube*, 413 F.3d 451, 459 (4th Cir. 2005) (quoting *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991)). "The burden of establishing standing falls on the party claiming subject-matter jurisdiction*." Cooksey v. Futrell*, 721 F.3d 226, 234 (4th Cir. 2013).

As noted above, Saidiani's FCA claims had accrued at the time he filed for bankruptcy in 2011. The Fourth Circuit has noted that "[I]n the Chapter 7 bankruptcy context—which requires liquidation and distribution of assets by the trustee—we have recognized, '[i]f a cause of action

is part of the estate of the bankrupt then the trustee alone has standing to bring that claim.'" *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 342 (4th Cir. 2013) (internal citation omitted). "Property of the estate" includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1); *United States v. Whiting Pools, Inc.*, 462 U.S. 198 (1983) (holding that even a debtor's right to redeem foreclosed property constitutes property of the estate). This definition is intentionally broad and includes speculative or contingent litigation claims. *See Johnson, Blakely, Pope, Bokor, Ruppel & Burns, P.A v. Alvarez (In re Alvarez)*, 224 F.3d 1273, 1279–80 (11th Cir. 2000) (holding that a legal malpractice claim arising from bankruptcy counsel's alleged negligence was property of the estate); *Polis v. Getaways, Inc. (In re Polis)*, 217 F.3d 899, 902 (7th Cir. 2000) (noting that "[l]egal claims are assets whether or not they are assignable, especially when they are claims for money . . ..");  *Browning Mfg. v. Mims (In re Coastal Plains, Inc.)*, 179 F.3d 197, 207–08 (5th Cir. 1999) (stating that debtors have an express, affirmative duty to disclose all assets, *including contingent and unliquidated claims*) (emphasis in original). Accordingly, the property of Saidiani's estate included this action (a filed lawsuit) as well as his Sharing Agreement. Saidiani had an affirmative duty to disclose this case and the Sharing Agreement to the bankruptcy court pursuant to 11 U.S.C. §521(a)(1)(B), but he did not do so. As Saidiani's claim against Shufeldt was undoubtedly property of his 2011 bankruptcy estate, only the trustee has standing to bring the claim.

Although the Fourth Circuit has not yet had an opportunity to weigh in, two circuit courts have addressed this precise issue. The Fifth Circuit and the Eighth Circuit have held that debtors must disclose FCA cases in which the debtors have an interest to the bankruptcy court, even when that FCA claim has not yet been filed. *U.S. ex rel. Spicer v. Westbrook*, 12-10858, 2014

4

WL 1778030 (5th Cir. May 5, 2014); *U.S. ex rel. Gebert v. Transp. Admin. Servs.*, 260 F.3d 909 (8th Cir. 2001). In *Spicer*, the Fifth Circuit held that a bankruptcy trustee, Spicer, was the only party with standing to serve as relator in a *qui tam* case that the original relators, Westbrook and a company he owned, failed to adequately disclose in their Chapter 7 bankruptcies. *Spicer*, 2014 WL 1778030, at *5-7. Unlike Saidiani, Westbrook (but not his company) partially disclosed his FCA claim by listing "potential claims" involving an "unknown" amount on his asset schedule and then orally identifying the FCA claim to Spicer. *Id.* at *1-2. The Fifth Circuit held that "Westbrook's vague, circuitous descriptions of the FCA suit" were insufficient, particularly in light of the fact that Westbrook's draft complaint—which he had submitted to the government for review, but had not yet filed under seal—sought more than $12 billion in damages. *Id.* at *6. Because Westbrook was not forthcoming about the potential value of his FCA claim and his company did not disclose the existence of the claim at all, neither Westbrook nor his company had standing to pursue the FCA claim. *Id.* at *6-7.

In *Gebert v. Transportation Administrative Services*, the Eighth Circuit Court of Appeals held that a FCA relator who failed to disclose a *qui tam* claim that had already accrued when the relator filed for bankruptcy did not have standing to later bring the claim. The Geberts filed for bankruptcy in 1994, entered a settlement agreement that was approved by the bankruptcy court in 1995, and were discharged in 1996. 260 F.3d at 912. In 1998, the Geberts brought a *qui tam* complaint alleging FCA violations dating back to 1991. *Id.* The court dismissed the FCA case for lack of standing because the Geberts failed to list the potential FCA claim on their Schedule Bs, even though "as of July 1994 when the Geberts filed for bankruptcy, they possessed all of the information necessary to file the *qui tam* claim." *Id.* at 913. The Eighth Circuit reasoned:

> After bankruptcy, the relator no longer has an interest in any damages because the claim is no longer his; the relator's right to the claim (including any money damages) is now the property of the bankruptcy estate. At the time the Geberts filed the *qui tam* claim, they no longer had a stake in the litigation or in any money damages that might flow therefrom, i.e., there was no "bounty" that they would be entitled to in the event their claim was successful. If Article III standing in *qui tam* cases is founded in a statutory assignment of the government's injury-in-fact to the relator, as [*Vermont Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 769-73, 120 S. Ct. 1858, 1861-63, 146 L.Ed. 2d 836 (2000)] says it is, then the bankruptcy proceeding, which divests the relator of the ability to retain an injury-in-fact assignment from the United States, would also divest the relator of standing to bring the claim.

*Id.* at 914.

Just like the relators in *Gebert*, Saidiani argues that he cannot lose standing, because in the FCA context, the United States, not the Relator, is the real party in interest.[2] The Eight Circuit carefully considered and then rejected this precise argument in *Gebert*. The Court finds the reasoning of the *Gebert* and *Spicer* cases highly persuasive and holds that Saidiani lacks standing to maintain this lawsuit. After filing for bankruptcy, the Relator no longer had an interest in the FCA claim, as it became property of the estate.

Saidiani also argues that Shefeldt has waived the right to challenge Saidiani's standing because standing is an affirmative defense that is waived if not asserted in a timely manner. Saidiani's argument is simply without merit, however, as the Supreme Court has clearly stated that "The question of standing is not subject to waiver . . . . 'The federal courts are under an independent obligation to examine their own jurisdiction, and

---

[2] The relators in *Gebert* argued that, "despite their earlier bankruptcy, they cannot be divested of standing to bring the *qui tam* claim because it is the United States' injury-in-fact that imparts standing to the Geberts, not the Geberts' own injury-in-fact." 260 F.3d at 913.

6

standing is perhaps the most important of the jurisdictional doctrines.'" *United States v. Hays*, 515 U.S. 737, 742 (1995) (citation, alterations, and internal quotation omitted); *see also Lewis v. Casey*, 518 U.S. 343, 349 n.1 (1996) ("standing . . . is jurisdictional and not subject to waiver").

In addition to a lack of standing, the Court finds that Saidiani is judicially estopped from asserting his claims because of his concealment of his assets in the bankruptcy proceeding. Judicial estoppel "'prevents a party who has successfully taken a position in one proceeding from taking the opposite position in a subsequent proceeding.'" *United States v. Simmons*, 247 F.3d 118, 124 (4th Cir. 2001) (citation omitted).

"In order for judicial estoppel to apply (1) the party to be estopped must be advancing an assertion that is inconsistent with a position taken during previous litigation; (2) the position must be one of fact, rather than law or legal theory; (3) the prior position must have been accepted by the court in the first proceeding; and (4) the party to be estopped must have acted intentionally, not inadvertently." *Havird Oil Co., Inc. v. Marathon Oil Co., Inc.*, 149 F.3d 283, 292 (4th Cir. 1998). "The 'determinative factor' in the application of judicial estoppel is whether the party who is alleged to be estopped 'intentionally misled the court to gain an unfair advantage.'" *John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995). In his bankruptcy proceedings, Saidiani concealed his *qui tam* claims and swore under oath that he had no assets to shield his potential recovery in this case from his creditors and secure a no-asset discharge, while he simultaneously represented to the United States and other States'

Attorneys General that this action was worth millions of dollars to them (and, correspondingly, to him in his claimed Relator's share).

The Court finds that each element of judicial estoppel exists. The first element of judicial estoppel is satisfied because Saidiani represented to the bankruptcy court—through his failure to list the *qui tam* claim on the Schedule B or his SOFAs—that he did not possess the claim even though he had filed and amended his Complaint and continues to pursue the FCA claim. *See In re USinternetworking, Inc.*, 310 B.R. 274, 281-82 (Bankr. D. Md. 2004) (finding judicial estoppel prevented plaintiff from bringing claim it did not disclose in its bankruptcy reorganization case). The second element is satisfied because the existence of Saidiani's claim against NextCare and other defendants was a fact. The bankruptcy court accepted and relied on Saidiani's prior position—his sworn statement that he did not have any undisclosed legal claims, including his contingent claim against NextCare—when it filed an order discharging over a quarter of a million dollars' worth of Saidiani's debts. The last element of judicial estoppel is satisfied because Saidiani acted intentionally, not inadvertently, when he omitted this action on his bankruptcy filings. Saidiani was indisputably aware of this case at the time because he amended the Complaint the day before he filed for Chapter 7 protection, and he stood to profit from his deception by shielding any potential recovery in this case from his creditors. *See, e.g.*, *Barger v. City of Cartersville, Ga.*, 348 F.3d 1289, 1295 (11th Cir. 2003) ("The failure to comply with the Bankruptcy Code's disclosure duty is 'inadvertent' only when a party either lacks knowledge of the undisclosed claim or has no motive for their concealment.") (citing *In re Coastal Plains, Inc.*, 179 F.3d 197, 210 (5th Cir. 1999)).

Saidiani argues that judicial estoppel should not be applied under the circumstances of this case. He argues that his failure to disclose the case was in good faith because the case was under seal at the time he filed his schedule of assets in his bankruptcy case. In *Gebert*, the Eighth Circuit dismissed the relators' argument that the procedures for filing a *qui tam* claim under seal conflicted with—and absolved them from—their duty to disclose the *qui tam* suit in bankruptcy. 260 F.3d at 918 ("This argument is without merit."). Simply put, the fact that a case is under seal is not a reason to fail to disclose it. A debtor must list all assets and claims in his bankruptcy schedules, and if Congress had intended to except FCA claims, it could have done so. Moreover, there are a number of ways that Saidiani could have satisfied his obligations under the Bankruptcy Code while preventing public disclosure of the *qui tam* action. *See Spicer*, 2014 WL 1778030, at *6 n. 12 (detailing various ways the relator could have disclosed his *qui tam* claims without compromising their confidentiality.) Accordingly, the Court finds that Saidiani is judicially estopped from asserting the FCA claims in this action.

IT IS THEREFORE ORDERED that the Defendant's Motion to Dismiss is hereby GRANTED with prejudice as to Relator Saidiani; and

IT IS FURTHER ORDERED that this case will be held open as to the United States for a period of 60 days in order for the United States to make a determination as to what steps it will take with respect to this litigation. At the expiration of 60 days, hearing nothing from the Government, this Court will deem the entire action dismissed.

Signed: September 18,

Graham C. Mullen
United States District Judge